1  DAVID CHIU, State Bar #189542
   City Attorney
2  JENNIFER E. CHOI, State Bar #184058
   Chief Trial Deputy
3  ABIGAIL H. WALD, State Bar #309110
   Deputy City Attorney
4  Fox Plaza
   1390 Market Street, Sixth Floor
5  San Francisco, California 94102-5408
   Telephone:    (415) 554-3901
6  Facsimile:    (415) 554-3837
   E-Mail:       abigail.wald@sfcityatty.org
7
8  Attorneys for Defendant
   CITY AND COUNTY OF SAN FRANCISCO
9
10
11             UNITED STATES DISTRICT COURT

12             NORTHERN DISTRICT OF CALIFORNIA

13  RESHMA KAMATH,                          Case No. 3:23-CV-3531-JSC

14         Plaintiff,                       **DEFENDANT'S NOTICE OF MOTION AND**
                                            **MOTION TO DISMISS PLAINTIFF'S FIRST**
15         vs.                              **AMENDED COMPLAINT (Fed. R. Civ. P.**
                                            **12(b)(6); Fed. R. Civ. P. 41(b)) AND TO STRIKE**
16  SAN FRANCISCO POLICE DEPARTMENT         **PORTIONS OF FIRST AMENDED**
    (SFPD); UNITED STATES DEPARTMENT        **COMPLAINT (Fed. R. Civ. P. 12(f)) AND**
17  OF HOMELAND SECURITY; FEDERAL           **REQUEST FOR STAY; MEMORANDUM OF**
    PROTECTIVE SERVICES; STEVE              **POINTS AND AUTHORITIES IN SUPPORT**
18  GLUMAS; SECURITY GUARD # 1,
    SECURITY GUARD # 2; AND DOES 1-10,      Hearing Date:    June 20, 2024
19  INCLUSIVE,                              Time:            10:00 a.m.
                                            Place:           Courtroom 8 - 19th Floor
20         Defendants.                                       450 Golden Gate Ave.
                                                             San Francisco, CA 94102
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

NOTICE OF MOTION AND MOTION ............................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................... 3

I.      STATEMENT OF FACTS ................................................................................ 4

II.     LEGAL STANDARD ....................................................................................... 5

III.    ARGUMENT ..................................................................................................... 6

    A.      Plaintiff's Section 1983 Claim Is Barred Because the FAC Contains
        Insufficient Allegations of a Policy, Custom, or Practice Required to
        State a *Monell* Claim ............................................................................ 6

    B.      The FAC Fails to Allege a Predicate Constitutional Violation for a
        Section 1983 Claim ................................................................................ 7

        1.      Plaintiff Fails to Allege a Selective Enforcement Claim ................ 8

        2.      Plaintiff Fails to Allege an Unreasonable Seizure Under the
                Fourth Amendment ........................................................................ 11

        3.      Plaintiff Fails to Allege A Due Process Violation ......................... 12

    C.      Plaintiff Has Failed to Allege Any Plausible State Law Claims Against
        the City .................................................................................................... 14

        1.      Plaintiff Does Not Have A Good Faith Basis For Including a
                Conversion Claim Against the City in the FAC ............................ 14

        2.      Plaintiff's Civil Assault Claim Was Already Dismissed With
                Prejudice As to the City And Should be Dismissed Again or
                Stricken ......................................................................................... 15

    D.      Plaintiff's FAC Should Alternatively Be Dismissed For Violating the
        Court's March 12, 2024 Order ................................................................ 16

IV.     FURTHER LEAVE TO AMEND SHOULD NOT BE GRANTED .................... 17

V.      RENEWED REQUEST FOR DISCOVERY STAY ........................................... 18

VI.     CONCLUSION ................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**State Cases**

*Lagos v. City of Oakland*
    41 Cal.App.4th Supp. 10 (1995) ...................................................................14

*Love v. City of Monterey*
    37 Cal.App.4th 562 (1995) .........................................................................12

*Plaza v. Hollister Ltd. P'ship v. Cnty. of San Benito*
    72 Cal. App. 4th 1 (1999) ..........................................................................14

*Smith v. City of Los Angeles Dep't of Transp.*
    59 Cal.App.4th Supp. 7 (1997) ...............................................................14, 15

*State of California v. Superior Ct.*
    32 Cal.4th 1234 (2004) ..............................................................................16

*Tyler v. City of Alameda*
    34 Cal.App.4th 777 (1995) .........................................................................12

*Yamaha Motor Corp. v. Superior Court*
    185 Cal.App.3d 1232 (Ct. App. 1986) ......................................................14

**State Statutes & Codes**

California Government Code § 911.2(a) ............................................................15

California Government Code § 945.4 .................................................................15

California Vehicle Code § 40215(a) ..................................................................14

California Vehicle Code § 40215(c)(3) .......................................................13, 14

California Vehicle. Code §§ 40200 *et seq.* ..................................................14, 15

California Vehicle Code § 40230(a) ..................................................................14

**Federal Cases**

*Andrews v. City of Philadelphia*
    895 F.2d 1469 (3d Cir. 1990) .......................................................................7

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) .............................................................................5, 6, 7

*Austin v. Univ. of Oregon*
    925 F.3d 1133 (9th Cir. 2019) ......................................................................9

*Barren v. Harrington*
    152 F.3d 1193 (9th Cir. 1998) ......................................................................8

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007) .................................................................................................5

*Bordenkircher v. Hayes*
    434 U.S. 357 (1978) .................................................................................................8

*Bull v. City & Cnty. of San Francisco*
    595 F.3d 964 (9th Cir. 2010) ...................................................................................7

*Castillo v. McFadden*
    399 F.3d 993 (9th Cir. 2005) .................................................................................12

*Chang v. Rockridge Manor Condo*
    No. C-07-4005 EMC, 2008 WL 2683075, at *8 (N.D. Cal. Jul. 3, 2008), *aff'd*, 344 F. App'x 365
    (9th Cir. 2009) .........................................................................................................12

*City of Canton, Ohio v. Harris*
    489 U.S. 378 (1989) .................................................................................................6

*City of Los Angeles v. David*
    538 U.S. 715 (2003) ...............................................................................................12

*Conservation Force v. Salazar*
    646 F.3d 1240 (9th Cir. 2011) .................................................................................5

*Cuviello v. City & Cnty. of San Francisco*
    940 F.Supp.2d 1071 (N.D. Cal. 2013) .....................................................................9

*Ellins v. City of Sierra Madre*
    710 F.3d 1049 (9th Cir. 2013) .................................................................................6

*Epstein v. Washington Energy Co.*
    83 F.3d 1136 (9th Cir. 1996) ...................................................................................6

*Freeman v. City of Santa Ana*
    68 F.3d 1180 (9th Cir. 1995) ...................................................................................8

*Furnace v. Sullivan*
    705 F.3d 1021 (9th Cir. 2013) .................................................................................8

*Gillette v. Delmore*
    979 F.2d 1342 (9th Cir. 1992) .................................................................................7

*Goichman v. Rheuban Motors, Inc.*
    682 F.2d 1320 (9th Cir. 1982) ...............................................................................13

*In re W. States Wholesale Nat. Gas Antitrust Litig.*
    715 F.3d 716 (9th Cir. 2013) .................................................................................17

*King v. Cnty. of Los Angeles*
    885 F.3d 548 (9th Cir. 2018) ...................................................................................6

*Lopez v. City and Cnty. of San Francisco*
   Case No. 12-CV-06523-MEJ, 2014 WL 2943417, at *11 (N.D. Cal. June 30, 2014) ...............9

*Monell v. Dep't of Soc. Servs. of City of New York*
   436 U.S. 658 (1978) ..........................................................................................6, 7, 16

*Moore v. City of Santa Monica*
   185 Fed. App'x. 661 (9th Cir. 2006) .............................................................................12

*Pagtalunan v. Galaza*
   291 F.3d 639 (9th Cir. 2002) ......................................................................................16

*PB Farradyne v. Peterson*
   No. C 05-3447 SI, 2006 WL 2578273, at *3 (N.D. Cal. Sept. 6, 2006)....................................16

*Pena v. Gardner*
   976 F.2d 469 (9th Cir. 1992) ........................................................................................6

*Rosenbaum v. City and Cnty. of San Francisco*
   484 F.3d 1142 (9th Cir. 2007) ......................................................................................9

*S. Dakota v. Opperman*
   428 U.S. 364 (1976).................................................................................................11

*Scofield v. City of Hillsborough*
   862 F.2d 759 (9th Cir. 1988) ......................................................................................13

*Sepatis v. City & Cnty. of San Francisco*
   Case No. C-08-02497JCS, 2009 WL 1833991, at *10 (N.D. Cal. June 24, 2009), *aff'd*, 403 F. App'x
   224 (9th Cir. 2010)....................................................................................................9

*Serrano v. Francis*
   345 F.3d 1071 (9th Cir. 2003) ......................................................................................8

*Snowden v. Hughes*
   321 U.S. 1 (1944)................................................................................................8, 11

*Thompson v. City of Los Angeles*
   885 F.2d 1439 (9th Cir. 1989) .......................................................................................7

*Thornton v. City of St. Helens*
   425 F.3d 1158 (9th Cir. 2005) ..................................................................................8, 11

*Trevino v. Gates*
   99 F.3d 911, 918 (9th Cir. 1996) ...................................................................................6

**Federal Statutes**
42 United States Code § 1983.................................................................................6, 7, 8, 12, 13

**Rules**
Federal Rule of Civil Procedure 12(b)(6) ..........................................................................5

Federal Rule of Civil Procedure 12(f) ............................................................................16

Federal Rule of Civil Procedure 41(b)............................................................................16

**Constitutional Provisions**

United States Constituion, Fourteenth Amendment ...................................................8, 12

United States Constitution, Fifth Amendment ...........................................................7, 12

# NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on June 20, 2024, or as soon thereafter as this matter may be heard, before the Honorable Jacqueline Scott Corley, United States District Court, San Francisco, California, City and County of San Francisco, a municipal corporation, still erroneously sued as Defendant "San Francisco Police Department (SFPD)" ("Defendant" or the "City")[1] will, and hereby does, specially appear to move the Court for an order dismissing Plaintiff's First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), or in the alternative, under Federal Rule of Civil Procedure 41(b), and for an order striking portions of the First Amended Complaint under Federal Rule of Civil Procedure 12(f).

As explained more fully in the Memorandum of Points and Authorities, Defendant moves to dismiss Plaintiff's First Amended Complaint because its speculative and conclusory allegations do not permit a reasonable inference that an official policy or widespread custom caused any alleged violations of Plaintiff's rights.  Plaintiff also fails to state a claim under any of her federal or state legal theories.  Plaintiff's state law claims should also be dismissed because Plaintiff has failed to exhaust her administrative remedies, and failed to comply with the government claim presentation requirements before filing a suit against the City.  Plaintiff also has violated the Court's Order dated March 12, 2024.

The Court should also disregard Plaintiff's attempt to assert a civil assault claim against the City, because such claim was dismissed without leave to amend, and its inclusion is a violation of the Court's order dated March 12, 2024.  In the alternative, the Court should strike the portions of the First Amended Complaint that attempt to assert such claim, under Federal Rule of Civil Procedure 12(f) or under the Court's inherent authority.

Defendant bases its Motion on this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, all prior pleadings and orders in this action, and such argument as may be heard at the hearing on this matter.

---

[1] Plaintiff also purports to name as defendants: "United States Department of Homeland Security", "Federal Protective Services", "Steve Glumas", and two unnamed "security guards." The City does not respond on behalf of any of these other defendants.

Dated:  May 14, 2024

DAVID CHIU
City Attorney
JENNIFER E. CHOI
Chief Trial Deputy
ABIGAIL H. WALD
Deputy City Attorney


By: */s/ Abigail H. Wald*
    ABIGAIL H. WALD

Attorneys for Defendant
CITY AND COUNTY OF SAN FRANCISCO

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff's First Amended Complaint ("FAC") again seeks an award of millions of dollars because Plaintiff was ticketed and eventually towed for parking illegally multiple times.  Plaintiff has alleged no new facts that would establish any conduct in the FAC was performed pursuant to a City policy, custom, or practice, or that she had, in fact, exhausted her administrative remedies.  The FAC should be dismissed with prejudice.

Rather than allege additional facts to try to cure the Complaint's deficiencies following the Order granting dismissal, Plaintiff amended her complaint to accuse the court of being "blatantly racist and borderline idiotic" and not "understand[ing] how *Monell* works."  (ECF No. 67 (FAC), ¶¶ 5, 15, 37.)  The FAC also continues to allege claims only against the San Francisco Police Department, an entity with no capacity to sue or be sued, despite the Court ordering substitution of the City for SFPD, and improperly includes an assault claim that was already dismissed without leave to amend.

While the FAC may be more lurid in its rhetoric than Plaintiff's Complaint, it remains conspicuously vacant of facts supporting its speculative conclusions.  The FAC is based on the same ticketing/towing incident, but now includes the following additional allegations about the incident:

- Plaintiff provided photos showing she was parked illegally in a tow-away zone;

- Plaintiff also provided photos showing the others cars she believes were not ticketed and towed, with some photos documenting cars parked legally in metered parking, some cars parked in areas without visible signage restricting parking, and some cars parked with signage stating restrictions during certain hours, for example;

- Plaintiff alleges that she believes some of the other parked cars she saw were driven by "White" drivers or "Latin-Americans";

- Plaintiff believes that none of the other cars had drivers or passengers of Indian, Indian-American, or Hindu culture, but she did not see the drivers of all of the vehicles.

None of these allegations resolve the complaint's factual deficiencies.  None of these allegations evidence an underlying policy, custom, or practice that could give rise to liability for the City.  None of these allegations demonstrate Plaintiff exhausted the required administrative remedies to pursue state law claims against the City.  These new allegations are also too speculative to support that any predicate constitutional violation occurred.

1    The FAC fails to cure any of the previous deficiencies, and intentionally violates this Court's

2    prior order dismissing the Complaint, creating another basis for dismissal under Federal Rule of Civil

3    Procedure 41(b).  The FAC should be dismissed as to the City with prejudice.

4    **I.    STATEMENT OF FACTS**

5         Plaintiff alleges that she is Indian-American, Asian, and a woman of color.  (*Id*. ¶¶ 54, 79.)

6    The crux of Plaintiff's FAC is that she purportedly received three parking tickets for parking in the

7    same location on different days between May and July 2023, and after the third ticket, her car was

8    towed.  (*Id*. ¶¶ 32-53.)  She further alleges that security guards yelled at her, slammed a door in her

9    presence, and did "not allow[]" her to sign paperwork that was needed to have her car returned,

10   because the officer needed to release her vehicle had already left for the day.  (*Id*. ¶¶ 64, 67.)  Plaintiff

11   further alleges that she did not personally witness other cars being ticketed in the "same zone and same

12   road behind the Plaintiff's vehicle, and adjacent from Plaintiff's vehicle" during the times when she

13   saw a ticket on her own car.  (*Id*. ¶¶ 36.)  She believes that none of the other cars she saw were

14   ticketed because "[n]one of the windshields ha[d] a ticket displayed[.]" (*Id*. at ¶ 33)  She also

15   concludes that no other cars were towed, without further factual support.  (*Id*. ¶ 34.)

16        While Plaintiff still does not allege that she was present any of the times that her car was

17   ticketed (or towed), she continues to allege that she later saw SFPD, DHS, FPS (and apparently also

18   "Steve Glumas" and two unnamed "police officer[s]/security guard[s]") "scanning [her] license plate,

19   and checking the name of the person whom the vehicle belongs to; and, when they saw Reshma

20   Kamath as ownership, the Defendants intentionally and invidiously only gave a ticket to Reshma

21   Kamath based on her race, ethnicity and gender."  (*Id*. ¶ 53.)

22        Plaintiff has also separately filed a document containing photos (ECF No. 64), which she

23   appears to incorporate via reference to the FAC (FAC ¶ 7).  The photos show that Plaintiff was parked

24   illegally in a tow-away zone at the time she was ticketed and towed.  (ECF No. 64 at p. 36, 37, 40, 41.)

25   The photos also document cars parked legally in metered parking, cars parked without visible signage

26   restricting parking or restrictions only during certain hours.  (*See* ECF No. 64 *generally*.)  Many of the

27   cars also have decals on their windshields (although they are not legible in Plaintiff's photographs)

28   (*see id*. at p. 4, 11, 13, 16, 18, 19, 22, 29, 31, 33), other cars have handicap signs (*id*. at p. 8, 30, 34),

and other cars appear to be police vehicles (*id*. at p. 8, 11, 13).  The photos do not show the race, gender, or ethnicity of any of the other cars' owners or drivers.  (*id*.)  The FAC now claims that Plaintiff observed that some of the parked cars were driven by "White" drivers or "Latin-Americans" (FAC ¶ 39), but Plaintiff does not specify which cars they drove, or that she confirmed with those drivers (or any other drivers she alleges were not ticketed) that they had not been ticketed and/or had committed the same parking violation.  (*See id. generally*.)  The FAC also claims that "[n]one of the other car drivers and passengers were Indians/Indian-Americans/ and/or from Hindu culture." (*Id*. ¶ 38.)  However, Plaintiff admits she did not see the owners or drivers of some cars.  (*Id*. ¶ 39.)

Plaintiff filed this lawsuit the day after she alleges her car was towed, claiming that she was harmed because she lost the use of her car for one day, causing her to "incur[] expenses for alternate transportation" and she experienced "shame" and "mental distress."  (*Id*. ¶¶ 72-74.)  Plaintiff does not allege that she incurred any physical injuries.  (*See id. generally*.)  The FAC does not include any new allegations regarding Plaintiff's injuries, other than alleging, without further explanation, that Plaintiff still has not retrieved her vehicle.  (*Id*. ¶ 73.)  Based on these facts, Plaintiff claims that SFPD, along with two separate federal entities, DHS and FPS, and now three individuals, each violated her rights under both federal and state law.

## II.   LEGAL STANDARD

Dismissal under Rule 12(b)(6) is required when a complaint fails to "state a claim upon which relief may be granted."  A complaint should be dismissed where "there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  It also requires "more than a sheer possibility that a defendant has acted unlawfully."  *Id*. (internal quotation marks omitted).  In evaluating the sufficiency of allegations, the Court must also identify and disregard allegations "that, because they are no more than conclusions, are not entitled to

the assumption of truth." *Id*. at 679. Thus, a complaint that offers mere "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id*. (internal quotation marks omitted). Likewise, a complaint cannot survive a motion to dismiss if it relies on "naked assertion[s] devoid of further factual enhancement." *Id*. (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action" and "conclusory statements" are inadequate. *Id*. at 678; *see also Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim.") Vague and conclusory allegations of official participation in civil rights violations are also not sufficient to survive dismissal. *Pena v. Gardner*, 976 F.2d 469, 471–72 (9th Cir. 1992).

## III.   ARGUMENT

### A.   Plaintiff's Section 1983 Claim Is Barred Because the FAC Contains Insufficient Allegations of a Policy, Custom, or Practice Required to State a *Monell* Claim

The Court already dismissed Plaintiff's Section 1983 claim as to the City based on a finding that Plaintiff failed to plausibly establish a *Monell* theory of liability. ECF No. 54 at 5:27-28. Plaintiff has failed to put forth any additional facts to support her *Monell* claim against the City. Accordingly, the claim fails for the same reasons it did in Plaintiff's Complaint. *See id*.; ECF Nos. 41, 49.

Under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691, 694 (1978), a local government may be sued directly under Section 1983 only where the alleged unconstitutional conduct is the result of an official policy, practice or custom, and not for "an injury inflicted solely by its employees or agents." And, a showing must be made that an official policy, custom, or practice caused the constitutional tort. *See Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1066 (9th Cir. 2013); *King v. Cnty. of Los Angeles*, 885 F.3d 548, 558 (9th Cir. 2018); *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989) ("a municipality can be liable under § 1983 only where its policies are the moving force behind the constitutional violation"). "Absent a formal governmental policy, [a plaintiff] must show a longstanding practice or custom which constitutes the standard operating procedure of the local government entity." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). The practice or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" government policy. *Id*. "[P]roof of random acts or isolated events are insufficient to establish

custom.  Only if a plaintiff shows that his injury resulted from a 'permanent and well-settled' practice may liability attach for injury resulting from custom."  *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443-44 (9th Cir. 1989) (internal citations omitted), *overruled on other grounds by Bull v. City & Cnty. of San Francisco*, 595 F.3d 964 (9th Cir. 2010); *accord Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) ("A course of conduct is considered to be a 'custom' when… 'such practices of state officials [are] so permanent and well-settled' as to virtually constitute law.").

The FAC contains no allegations of conduct committed directly by the City, and only describes the conduct of "agents" of SFPD, who Plaintiff continues to allege, without explanation, were also agents of DHS and FPS.  Putting aside the implausibility that the three newly named individuals (Steve Glumas, and two unnamed security guards), who Plaintiff alleges work at the Phillip Burton Federal Building (FAC ¶¶ 23, 27-29) are somehow also SFPD employees or agents, their conduct (and/or the conduct of other unnamed agents) is still insufficient to state a *Monell* claim.  It is well settled that "a city may not be held vicariously liable for the unconstitutional acts of its employees under the theory of *respondeat superior*."  *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992).  Moreover, while Plaintiff still makes a formulaic recitation that a City policy or custom motivated conduct attributed to SFPD (and the federal defendants), the FAC again does not allege a single fact in support of this threadbare conclusion.  The FAC contains no additional facts other than Plaintiff's original allegation that: "Defendants acted pursuant to a policy and/or custom of Defendants without court order and without providing an opportunity to be heard under due process of the Fifth Amendment of the United States Constitution."  (FAC ¶ 94.)  This naked assertion can easily be disregarded.  *Iqbal*, 556 U.S. at 678.  Accordingly, Plaintiff does not sufficiently allege an official policy, practice or custom on the part of the City that can plausibly be viewed as the moving force behind the conduct plaintiff complains of.  Because the FAC provides no additional facts to establish *Monell* liability, Plaintiff's Section 1983 claim should be dismissed as to the City with prejudice.

**B.    The FAC Fails to Allege a Predicate Constitutional Violation for a Section 1983 Claim**

Plaintiff's Section 1983 claim cannot proceed against the City because it is barred by *Monell*.  The FAC also fails to allege any constitutional violation that could support a Section 1983 claim.

### 1.     Plaintiff Fails to Allege a Selective Enforcement Claim

Turning first to Plaintiff's claim that the City engaged in "selective enforcement and discrimination," the FAC fails to allege sufficient facts to support such a claim, and continues to rely on speculative allegations and unsupported conclusions.

"The Equal Protection Clause requires the State to treat all similarly situated people equally." *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (internal quotation marks omitted).  "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Id*. (quoting *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998)).  "Intentional discrimination means that a defendant acted at least in part because of a plaintiff's protected status." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003) (internal quotation marks omitted).  "Mere indifference to the effects of a decision on a particular class does not give rise to an equal protection claim." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005).  Likewise, "[e]vidence of different treatment of unlike groups does not support an equal protection claim." *Id*. at 1168.  "The goal of identifying a similarly situated class . . . is to isolate the factor allegedly subject to impermissible discrimination.  The similarly situated group is the control group." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995), *as amended on denial of reh'g and reh'g en banc* (Dec. 29, 1995).

Selective enforcement is also a species of equal protection claims.  "[T]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation so long as the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978); *Snowden v. Hughes*, 321 U.S. 1, 8, (1944) ("The unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is…an element of intentional and purposeful discrimination.").

To state a claim for selective enforcement, a plaintiff must allege: "(1) that he was treated differently from others similarly situated; (2) that this unequal treatment was based on an impermissible classification; (3) that the defendant acted with discriminatory intent in applying this

classification; and (4) that he suffered injury as a result of the discriminatory classification." *Lopez v. City and Cnty. of San Francisco*, No. 12-CV-06523-MEJ, 2014 WL 2943417, at *11 (N.D. Cal. June 30, 2014).

To show that Plaintiff was treated differently under the first element, she must show that "others generally are not prosecuted for the same conduct." *Sepatis v. City & Cnty. of San Francisco*, No. C-08-02497JCS, 2009 WL 1833991, at *10 (N.D. Cal. June 24, 2009), *aff'd*, 403 F. App'x 224 (9th Cir. 2010) (granting summary judgment for defendant on selective enforcement claim where plaintiff, whose car was towed following a suspected hit-and-run, did not provide sufficient evidence to identify similarly situated individuals, meaning other residents of San Francisco who are suspected of a hit-and-run, who did not have their cars towed).

To show a discriminatory purpose or intent to plausibly allege the third element, a plaintiff must show "the decision-maker . . . selected or affirmed a particular course of action at least in part 'because-of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Rosenbaum v. City and Cnty. of San Francisco*, 484 F.3d 1142, 1153 (9th Cir. 2007) (affirming judgment finding no evidence of selective enforcement where plaintiff fails to identify a similarly situated group that was treated differently); *see also Cuviello v. City & Cnty. of San Francisco*, 940 F. Supp. 2d 1071, 1097 (N.D. Cal. 2013) (dismissing selective enforcement claim where plaintiff did not allege there were "other members of the public . . . engaging in the same sorts of activities as Plaintiffs" who were "treated more favorably").

In *Austin v. Univ. of Oregon*, 925 F.3d 1133, 1138 (9th Cir. 2019), for example, the Ninth Circuit affirmed dismissal of a claim for selective enforcement that alleged a University "disciplined male students for sexual misconduct, but never female students" and was therefore "biased against men." Finding this allegation of gender-based disparate impact unavailing, the Ninth Circuit noted that the complaint failed to claim "that any female University students have been accused of comparable misconduct, and thus fails to allege that similarly situated students—those accused of sexual misconduct—are disciplined unequally." *Id.* The Ninth Circuit further noted, in agreement with the district court's order, that "[s]imply because enforcement is asymmetrical does not mean that it is selectively so." *Id.*

The FAC still fails to plausibly allege that Plaintiff was treated differently to others similarly situated, and still fails to offer facts supporting that any purported unequal treatment was based on an impermissible classification. While the FAC now claims that Plaintiff believes she observed "White or Latin-Americans" who were not ticketed, she does not state facts supporting her conclusion that they were, in fact, "similarly-situated car parkers" (FAC ¶ 39) or any factual basis for her belief that they were not ticketed, aside from the fact that she did not personally witness it. The photos Plaintiff has incorporated into her FAC likewise fail to demonstrate that similarly situated cars were treated differently on the basis of race, gender, or ethnicity.

***First***, Plaintiff's photos often visibly do not show similarly parked vehicles. *See* ECF No. 64 *generally*. The photos show cars parked legally in metered parking, cars parked without visible signage restricting parking, cars parked with restrictions only during certain hours or passenger loading zones, among other issues.[2] Moreover, as Plaintiff herself alludes, perhaps, other "cars parked on 450 Golden Gate Avenue were exempt under a policy; were police-officers in civilian clothing; or had some other authorization to park on the street." (Pl.'s Opp. to Mot. to Dismiss, ECF No. 42, at p. 22:21-25.) The photos also do not demonstrate when or how long cars were parked—they could have been parked too briefly for enforcement to occur. Plaintiff does not claim she confirmed with any drivers that they were parked illegally or that were parked during the time where tickets were issued.

***Second***, Plaintiff's photos do not show the race, gender, or ethnicity of any other vehicle owner or driver that Plaintiff alleges was not ticketed. *See* ECF No. 64 *generally*. Plaintiff admits she is not aware of who drove some vehicles, and does not even allege which of the vehicles she photographed were driven by persons she believed to be "White or Latin-Americans." (FAC ¶ 39.) Plaintiff also simply concludes, without basis, that none of the cars who she alleges escaped enforcement were Indian, Indian-American, or of Hindu culture. (FAC ¶ 38.)

***Finally***, Plaintiff's photo "evidence" still fails to provide sufficient information to determine whether or not the other vehicles did, in fact, escape enforcement for any perceived violation. While

[2] Many of the cars also have decals on their windshields (although they are not legible in Plaintiff's photographs) (*e.g.*, ECF No. 64 at p. 4, 11, 13, 16, 18, 19, 22, 29, 31, 33), other cars have handicap signs (*id.* at p. 8, 30, 34), and other cars appear to be police vehicles (*id.* at p. 8, 11, 13).

Plaintiff concludes they were not ticketed or towed, she provides no facts in support of this conclusion other than her brief observations.  This is insufficient—cars could have been ticketed earlier or later in the day when Plaintiff was not present.  Again, Plaintiff does not allege she spoke to any drivers to confirm they were parked illegally, or that they were not ticketed.  Accordingly, Plaintiff has failed to plausibly allege any other vehicles were, in fact, similarly situated and ultimately treated differently.

Even if the FAC's scant facts and speculative conclusions were sufficient to establish that other similar drivers were treated different (they are not), Plaintiff still does not allege any facts from which discriminatory intent may be inferred.  The FAC does not allege that any of the persons she interacted with ever made disparaging statements based on race, ethnicity or gender, or ever referenced Plaintiff's race, ethnicity, or gender to her or to anyone at any other time.  A discriminatory purpose is not presumed and it is the plaintiff's burden to allege "a showing of clear and intentional discrimination."  *Snowden v. Hughes*, 321 U.S. 1, 8 (1944).  Plaintiff's claim that "Defendants intentionally and invidiously only gave a ticket to Reshma Kamath based on her race, ethnicity and gender" is an entirely subjective interpretation by a plaintiff party, and attributing a discriminatory motivation to the City on such basis is "purely conclusory" and is therefore properly disregarded. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 n.4 (9th Cir. 2005).

As Plaintiff's allegations of race, ethnicity, or gender-based discrimination and selective enforcement remain conclusory and speculative even after the opportunity to amend, the Court should dismiss Plaintiff's Section 1983 claim based on discrimination and selective enforcement against the City without leave to amend.

### 2.      Plaintiff Fails to Allege an Unreasonable Seizure Under the Fourth Amendment

It is well-settled that police have authority to seize and remove vehicles for traffic violations, and doing so does not violate the Fourth Amendment.  *See S. Dakota v. Opperman*, 428 U.S. 364, 368–69 (1976) ("Police will also frequently remove and impound automobiles which violate parking ordinances and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic. The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge.")

While Plaintiff still alleges that her vehicle was wrongfully taken without a warrant (FAC ¶ 78), the allegations in the FAC do not support that any unreasonable seizure occurred.  Rather, the FAC merely demonstrates that Plaintiff was subject to a routine, legal tow after parking illegally multiple times, and after being clearly provided with notice that she was parking in a tow-away zone.  (FAC ¶ 47; ECF No. 64 at p. 36, 37, 40, 41.)  Plaintiff does not allege any facts that would cast doubt on whether she was, in fact, parked illegally when she was ticketed and subsequently lawfully towed.  In fact, she has now attached photos showing that she was parked illegally in a tow-away zone.  (ECF No. 64 at p. 36, 37, 40, 41.)  The Court should dismiss Plaintiff's Section 1983 claim against the City based on the Fourth Amendment with prejudice.

### 3.    Plaintiff Fails to Allege A Due Process Violation

Due process only requires that individuals have an opportunity to be heard at a meaningful time and in a meaningful manner.[3]  *City of Los Angeles v. David*, 538 U.S. 715, 717 (2003).  Courts have routinely held that the Vehicle Code procedures for administrative review of parking citations satisfy procedural due process standards.  *Moore v. City of Santa Monica*, 185 Fed. App'x. 661 (9th Cir. 2006) (affirming the dismissal with prejudice of the *pro se* plaintiffs' due process claims arising from parking tickets he received in Santa Monica because California provides an "adequate and prompt post-deprivation remedy"); *Love v. City of Monterey*, 37 Cal. App. 4th 562, 586 (1995) (holding that "the statutory scheme for contesting parking tickets does not violate due process requirements") (citing *Tyler v. City of Alameda*, 34 Cal. App. 4th 777, 787 (1995)).  Even where a Plaintiff alleges that a parking violation was wrongful, it will not amount to a procedural due process violation "where there is a process in place to contest the citation."  *Chang v. Rockridge Manor Condo.*, No. C-07-4005 EMC, 2008 WL 2683075, at *8 (N.D. Cal. Jul. 3, 2008), *aff'd*, 344 F. App'x 365 (9th Cir. 2009) (dismissing section 1983 claim for failure to state a claim where plaintiff alleged

---

[3] The FAC alleges all defendants violated the due process requirements of both the Fifth and Fourteenth Amendment.  For avoidance of doubt, the due process requirements of the Fifth Amendment only apply to the federal government.  *E.g., Castillo v. McFadden*, 399 F.3d 993, 1002 n.5 (9th Cir. 2005) ("The Fifth Amendment prohibits the federal government from depriving persons of due process, while the Fourteenth Amendment explicitly prohibits deprivations without due process by the several States[.]").  Accordingly, the City cannot be subject to a Section 1983 claim based on a due process violation under the Fifth Amendment, as it is not part of the federal government.

she was unlawfully cited for a parking violation, due to adequate state court processes and remedies available to contest citations).

The Ninth Circuit has also already determined that due process does not require a vehicle owner be entitled to a pre-towing hearing, pre-towing notice, or an opportunity to immediately contest the tow before getting their vehicle back.  *Scofield v. City of Hillsborough*, 862 F.2d 759, 766 (9th Cir. 1988) ("injury caused by a justified deprivation, including distress, is not properly compensable under § 1983.").  Additionally, due process does not require that a towed vehicle be released to an owner on demand.  *Goichman v. Rheuban Motors, Inc.*, 682 F.2d 1320, 1324 (9th Cir. 1982) (holding that "the government's interest in efficient and inexpensive towage of illegally parked automobiles is sufficient to outweigh the private interest in return-on-demand.")

While Plaintiff alleges that her vehicle was wrongfully taken without due process (FAC ¶¶ 77, 94), the allegations in the FAC still do not support that any due process violations occurred.  Even if Plaintiff contends the parking tickets and tow were wrongful, Plaintiff nonetheless had the opportunity to contest those tickets and the towing incident via the administrative hearing process pursuant to California Vehicle Code § 40215(c)(3), as further explained in Section III.C.1. *infra*.  Plaintiff therefore had due process available to her as an adequate post-deprivation remedy.  Ticketing and towing are both permitted under the California Vehicle Code, and any disputes relating to the ticketing or towing of the subject vehicle are subject to the well-defined administrative procedures further explained below.  Plaintiff even admits she had notice her car would be towed, having previously received a ticket indicating she was in a "tow-away zone" (FAC ¶ 47.)  Plaintiff does not allege she was deprived of the opportunity to contest her tow, only that she was not immediately able to complete paperwork to release her vehicle, after learning of the tow.  (FAC ¶¶ 67, 69, 71.)  But the Ninth Circuit has already rejected the argument that due process could be violated by a vehicle owner being unable to obtain the immediate return of their vehicle on demand.  *Goichman*, 682 F.2d at 1324–25.  Accordingly, the Complaint fails to state any facts demonstrating that the City engaged in any unconstitutional towing policies or customs that would support liability for a due process violation under 42 U.S.C. § 1983.  The FAC should also be dismissed with prejudice as to the City on this basis.

**C.     Plaintiff Has Failed to Allege Any Plausible State Law Claims Against the City**

**1.     Plaintiff Does Not Have A Good Faith Basis For Including a Conversion Claim Against the City in the FAC**

Plaintiff's state law claim for conversion appears to be based solely on a parking ticket and towing incident. However, no remedies are available in federal court for harms stemming from a parking/towing incident subject to clearly-defined state administrative procedures, which Plaintiff has disregarded. Because Plaintiff has failed to exhaust her administrative remedies, she cannot state a claim for conversion based on her parking/towing incident. The FAC fails to include any facts demonstrating that Plaintiff has exhausted the requisite administrative remedies, and this claim should be dismissed with prejudice as a result.

"The doctrine of exhaustion of administrative remedies provides that 'where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act.' . . . The doctrine is 'a fundamental rule of procedure laid down by courts of last resort, following under the doctrine of stare decisis, and binding upon all courts.'" *Plaza v. Hollister Ltd. P'ship v. Cnty. of San Benito*, 72 Cal. App. 4th 1, *29 (1999). Compliance with the doctrine "is a jurisdictional prerequisite, not a matter of judicial discretion." *Yamaha Motor Corp. v. Superior Court*, 185 Cal. App. 3d 1232, 1240 (Ct. App. 1986).

The California Vehicle Code sets forth California's civil administrative procedure for contesting parking citations. *See* Cal. Veh. Code §§ 40200 *et seq.* Under California Vehicle Code section 40200, *et seq.*, Plaintiff had the ability to contest a parking citation through (1) an initial review by the issuing agency (Cal. Veh. Code § 40215(a)); (2) a subsequent "independent, objective, fair and impartial" administrative hearing (Cal. Veh. Code § 40215(c)(3)); and (3) review of the administrative hearing by "appeal to be heard by the . . . superior court. . .." (Cal. Veh. Code § 40230(a)). No appeal lies from the judgment of the Superior Court in light of "the specific and comprehensive nature of the statutory scheme provided in section 40200 *et seq.*, and the clear legislative intent that the courts have limited involvement in the determination of liability for parking violations...." *Smith v. City of Los Angeles Dep't of Transp.*, 59 Cal. App. 4th Supp. 7, 10 (1997); *see also Lagos v. City of Oakland*, 41 Cal. App. 4th Supp. 10, 12 (1995) (concluding that "the Legislature

intended this 'de novo' review of the administrative decision in the municipal court to be the extent of the process due a parking violation contestant," and dismissing further appeal for lack of jurisdiction).

The California Vehicle Code promulgates that administrative hearings are the *exclusive* avenue for review of parking and towing issues.  In *Smith*, for example, the appellate department of the superior court concluded that "the procedure for review set forth in § 40200 *et seq.* … is the only procedure available to contest a parking citation."  59 Cal. App. 4th Supp. at 7.  Plaintiff should not be excused for her non-compliance with the California Vehicle Code, which governs the ticketing and tow process.  Plaintiff has failed to allege compliance with the administrative hearing and appeals process necessary for compliance with the exhaustion requirement, and her state law claim for conversion should therefore be dismissed with prejudice.[4]

### 2.   Plaintiff's Civil Assault Claim Was Already Dismissed With Prejudice As to the City And Should be Dismissed Again or Stricken

Plaintiff's Civil Assault claim was already dismissed with prejudice as to the City, and must therefore be dismissed from the FAC, as Plaintiff was not granted leave to amend such claim.  ECF No. 54 at 6.  For avoidance of doubt, Plaintiff cannot proceed with her state law claims against the City because she failed to timely file a government claim.  Under section 911.2(a) of the California Government Code, "[a] claim relating to a cause of action for death or for injury to person or to personal property ... shall be presented as provided in Article 2 (commencing with Section 915) of this chapter not later than six months after the accrual of the cause of action."  Section 945.4 of the California Government Code thereafter states that "no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented…until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board[.]"  The California Supreme Court has thus held that "under these statutes, failure to timely present a claim for money or damages to a public entity

---

[4] Additionally, it remains unclear from the FAC how SFPD was involved in the towing of Plaintiff's vehicle.  While Plaintiff still makes a conclusory claim that all Defendants issued her tickets and towed her vehicle (FAC ¶ 40), other alleged facts contradict this claim; namely, Plaintiff stated that she was in "the office of the DHS FPS" when she tried to obtain the release of her towed vehicle, implying that a federal defendant ordered the tow, rather than SFPD.  (FAC ¶ 100.)

bars a plaintiff from filing a lawsuit against that entity." *State of California v. Superior Ct.*, 32 Cal. 4th 1234, 1239 (2004).  The FAC fails to allege that Plaintiff complied with the government claims presentation requirement or state why such process is excused, therefore her state law claims against the City must be dismissed.  *Id.* ( "failure to allege facts demonstrating or excusing compliance with the claim presentation requirement subjects a claim against a public entity to a demurrer.")

Alternatively, the Court can disregard or strike portions of the FAC under Federal Rule of Civil Procedure 12(f) or its inherent authority.  *See* Fed. R. Civ. P. 12(f) (providing that a court may strike "from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter"); *see also, e.g., PB Farradyne v. Peterson*, No. C 05-3447 SI, 2006 WL 2578273, at *3 (N.D. Cal. Sept. 6, 2006) (striking allegations that were "outside the scope of the leave to amend granted" by a prior court order and denying leave to amend to include such allegations).  Because Plaintiff was not granted to leave to amend as to her civil assault claim against the City, this claim can alternatively be stricken.

### D.   Plaintiff's FAC Should Alternatively Be Dismissed For Violating the Court's March 12, 2024 Order

Under Federal Rule of Civil Procedure 41(b), "[i]f the plaintiff fails…to comply with…a court order, a defendant may move to dismiss the action or any claim against it."  Plaintiff's FAC can alternatively be dismissed for its failure to comply with the Court's previous order of dismissal (ECF No. 54).  "In determining whether to dismiss a claim for…failure to comply with a court order, the Court must weigh the following factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to defendants/respondents; (4) the availability of less drastic alternatives; and (5) the public policy favoring disposition of cases on their merits."  *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002).

On March 12, 2024, this Court dismissed Plaintiff's Complaint, because the Complaint failed to allege a plausible *Monell* claim (and also failed to allege an underlying constitutional violation), failed to allege Plaintiff exhausted her administrative remedies as needed to bring a conversion claim against the City, and failed to allege a civil assault claim against the City.  ECF No. 54.  Plaintiff was also ordered to substitute the City for SFPD.  *Id*. at 3-4.  Plaintiff was only granted partial leave to amend.  Plaintiff was granted leave to amend her Section 1983 claim against the City.  *Id*. at 7.

However, Plaintiff was only granted leave to amend her conversion claim against the City, "to the extent Plaintiff has a good faith basis for doing so." *Id*.  And, Plaintiff was not granted leave to amend her civil assault claim against the City.  *Id*. at 6.  Plaintiff was also ordered to "specifically indicate which defendant(s)" each claim "is alleged against" and, Plaintiff was ordered to file an Amended Complaint (*id*. at 7-8), which was required to be filed by April 30, 2024.  ECF No. 63.

The FAC still fails to name the City as a defendant in place of SFPD, even though SFPD has no capacity to sue or be sued (ECF Nos. 41 at 5; 49 at 2).  The FAC still included a conversion claim as to the City, despite including no allegations indicating Plaintiff had exhausted the requisite administrative remedies.  The FAC still included a civil assault claim against the City, despite the claim being dismissed with prejudice.  The FAC still fails to specifically indicate which defendant(s) each claim is alleged against.  Plaintiff also failed to timely file her FAC.  Plaintiff has wasted court and party resources by filing a FAC that intentionally violates the Court's prior order regarding dismissal, and which does not resolve any of the bases that led to the original dismissal.  No less drastic remedy would be effective.  Plaintiff's claims against the City should alternatively be dismissed under Federal Rule of Civil Procedure 41(b).

## IV.    FURTHER LEAVE TO AMEND SHOULD NOT BE GRANTED

In determining whether to grant leave to amend, the court considers bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended his complaint.  *See In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013).  Here, Plaintiff already had the opportunity to amend her Section 1983 claim and her conversion claim.  However, the FAC alleged no additional facts that would permit a reasonable inference that an official policy or widespread custom of the City caused any alleged violation of Plaintiff's rights, and alleged no additional facts demonstrating that Plaintiff exhausted the requisite administrative remedies prior to bringing her conversion claim.  The additional facts Plaintiff did include were scant and speculative.  Plaintiff failed to substitute the City for SFPD, an entity with no capacity to sue or be sued.  Plaintiff has long been aware of her lawsuit's deficiencies.  The City filed its first Motion to Dismiss over three months ago, and Plaintiff received multiple extensions to file her FAC.  It is time for this action to be dismissed with prejudice as to the City.

## V.    RENEWED REQUEST FOR DISCOVERY STAY

Discovery is already stayed until the next case management conference.  ECF No. 54 at p. 7:21-22.  In the event that the Court does not resolve the City's motion prior to the next case management conference, the City renews its request that discovery remain stayed until the City answers an amended complaint for the reasons previously stated (*see* ECF No. 41 at p. 17-18).

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff's FAC should be dismissed as to the City with prejudice.

Dated:  May 14, 2024

DAVID CHIU
City Attorney
JENNIFER E. CHOI
Chief Trial Deputy
ABIGAIL H. WALD
Deputy City Attorney


By: */s/ Abigail H. Wald*
ABIGAIL H. WALD

Attorneys for Defendant
CITY AND COUNTY OF SAN FRANCISCO